# COURT OF APPEALS
# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2018AP2205

†Petition for Review filed

Complete Title of Case:

IN THE INTEREST OF C. G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

C. G.,

†RESPONDENT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | January 20, 2021 |
| Submitted on Briefs: | November 9, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Kelsey Loshaw* and *Cary Bloodworth*, assistant state public defenders, Madison. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the briefs of *Scott E. Rosenow*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

**2021 WI App 11**

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 20, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2205**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016JV38**

**IN COURT OF APPEALS**

---

IN THE INTEREST OF C. G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

C. G.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Shawano County: WILLIAM F. KUSSEL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.[1]

¶1   SEIDL, J. C.G. ("Ella") appeals an order denying her postdispositional motion to stay her juvenile sex offender registration under WIS. STAT. § 301.45. WISCONSIN STAT. § 301.45(2)(a) mandates that the Department of Corrections (DOC) maintain a registry of all persons required to register as sex offenders. For each offender, the registry must include "[t]he person's name, including any aliases used by the person." Sec. 301.45(2)(a)1. WISCONSIN STAT. § 301.47(2)(a)-(b), in turn, provides that a registered sex offender may not "[c]hange his or her name" or "[i]dentify himself or herself by a name unless the name is one by which the person is identified with the [DOC]."

¶2   Ella contends the circuit court erroneously exercised its discretion by denying the stay. In addition, Ella contends that, as applied to her, requiring her to register as a sex offender violates her First Amendment rights because the statute's prohibition against legally changing her name restricts her right to self-expression as being a female. She further contends that because the prohibition is a content based restriction, we must apply strict scrutiny. By applying strict scrutiny, Ella asserts that her right to self-expression outweighs any government interest in limiting her use of another legal name. Finally, Ella contends that requiring her to register as a sex offender constitutes cruel and unusual punishment, thereby violating her Eighth Amendment rights.

---

[1] This appeal was converted from a one-judge appeal to a three-judge appeal by the May 11, 2020 order of the Chief Judge of the Court of Appeals. *See* WIS. STAT. § 752.31(3); WIS. STAT. RULE 809.41(3) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3    We conclude that the circuit court did not erroneously exercise its discretion when it denied Ella's motion to stay the sex offender registration requirement. The sex offender registry statute's prohibition against Ella changing her legal name does not restrict her right to self-expression and, thus, does not implicate the First Amendment. Even if we were to determine that the First Amendment is implicated, we conclude the statute is content neutral, requiring the application of intermediate scrutiny. Applying that level of scrutiny, we conclude the registry restriction on Ella's changing her name is constitutional as it furthers an important government interest in an incidentally restrictive manner. We further determine that we are bound by our supreme court's decision in *State v. Bollig*, 2000 WI 6, 232 Wis. 2d 561, 605 N.W.2d 199, that no Eighth Amendment violation occurs based upon the registry's prohibition against name changes. We therefore affirm.

## BACKGROUND

¶4    On May 10, 2016, the Shawano Police Department received a complaint that a fifteen-year-old male with disabilities, Alan, had been held down by Ella and Mandy[2] while at Mandy's house, so that Ella could perform oral sex on him. At the time of her appeal, Ella was nineteen years old, but she was fifteen at the time of the incident. Ella sat on Alan's legs while Mandy held down his arms. Alan was five feet, ten inches tall and weighed 110 pounds. A face sheet from the DOC stated that Ella was six feet, five inches tall and weighed 345

---

[2] This opinion refers to the three juveniles as Ella, Alan, and Mandy. Pursuant to WIS. STAT. RULE 809.81(8), we use pseudonyms when referring to the juveniles in this confidential matter. Ella, a transgender female, prefers that we reference her using feminine pronouns, and we follow her preference.

pounds. Alan is on the autism spectrum and is blind in his left eye. When Alan tried to yell for help from Mandy's parents, Mandy placed one of her hands over Alan's mouth. When Ella stopped the assault, Alan pulled up his underwear and pants and then left Mandy's house. Alan did not report the incident to anyone because he was embarrassed and Ella and Mandy had told him not to say anything. Alan's parents later learned of the incident after they searched his cell phone and discovered Facebook messages indicating that Alan had been held down while a person performed oral sex on him.

¶5 After a police investigation, the State filed a delinquency petition against Ella, alleging one count of sexual assault of a child under sixteen years of age, as a party to a crime, contrary to WIS. STAT. § 948.02(2), and one count of disorderly conduct, as a party to a crime, contrary to WIS. STAT. § 947.01(1). Ella pled no contest to the sexual assault count of the petition, and the disorderly conduct count was dismissed and read in. Ella was adjudicated delinquent, and the circuit court entered a dispositional order placing her at Lincoln Hills School for six to ten months. The court's dispositional order described Ella's act as a "forceful delinquent act to a child" and stated that "[Ella] needs to have intensive treatment to help h[er] develop a better thought process to where [s]he can improve h[er] decision making skills and reduce h[er] impulsive behaviors."

¶6 Ella's attorney moved to stay the sex offender registry requirement under WIS. STAT. § 301.45. Following a hearing on Ella's motion, the circuit court denied the requested stay. The court found that: (1) there was a ten-month age difference between Alan and Ella; (2) Alan and Ella's relationship was that of friendship, not romance; (3) there was no indication that Alan suffered physical bodily harm; (4) Alan was on the autism spectrum and was evaluated to be functioning at a sixth-grade level as a freshman in high school; (5) it was a

4

forcible situation; (6) the act was terrifying; and (7) Ella was at a "high risk" to reoffend.[3]  The latter finding was made despite Ella presenting expert testimony by a psychotherapist, Dr. Mark Reich, opining that Ella would be in a "low risk category of reoffense."

¶7    Ella subsequently filed a motion to change placement claiming that Lincoln Hills was an unsafe placement for her and that she exhibited good behavior and progress in treatment.  Ella stated that another youth had punched her in the head.  Lincoln Hills' staff suggested that Ella was partly to blame for that incident because she told other youths that they were cute, which "could get other youth kind of worked up a little bit."  Additionally, a room search revealed that Ella had written a number of letters inappropriately referencing teachers.  Ella nonetheless successfully completed Lincoln Hills' juvenile cognitive intervention program.  The circuit court denied Ella's motion for a change of placement, finding that her placement at Lincoln Hills remained appropriate.

¶8    Ella was also the victim of a second unprovoked assault by another youth at Lincoln Hills causing a significant head wound requiring hospital treatment.  Following this assault, the DOC transferred Ella from Lincoln Hills to the Mendota Juvenile Treatment Center (MJTC) in order to better serve Ella's mental health needs and for her safety.  Ella was sent to MJTC, in part, because she was transitioning as a transgender youth from a male to a female identity, and she was a target for aggression from other youths at Lincoln Hills.

---

[3] At Ella's initial motion hearing to stay the sex offender reporting requirements, the court found Ella to be at a "high risk" to reoffend.  However, in the circuit court's written decision on Ella's postdispositional motion to stay the sex offender registration requirements based on new information, the court found that there was a risk to reoffend, albeit a low risk.

¶9 Ella adjusted well at MJTC, although she was sanctioned twice for making disrespectful comments to staff during her first week. She obtained near perfect scores in the behavioral program and maintained the highest privilege level throughout most of her stay. To determine if a special purpose evaluation was warranted, Dr. Michael Caldwell, an MJTC psychologist, conducted a WIS. STAT. ch. 980 evaluation, which revealed Ella to be in a relatively low-risk category for reoffense.

¶10 Ella's dispositional order terminated, and she filed a postdispositional motion seeking to stay her sex offender registration, and to have the circuit court declare Wisconsin's juvenile sex offender registry provisions unconstitutional. Ella also filed a supplemental postdispositional motion, attaching a psychosexual evaluation completed by Dr. Nick Yackovich, Jr., a psychologist who specializes in sex offender treatment. Yackovich conducted a risk assessment, opining thereafter that Ella's predicate offense likely was the result of "immature decision-making and poor boundary setting, but does not evidence criminogenic factors or a deviant sexual interest." He also opined that the public would not be protected by Ella's registration as a sex offender and that there was a possibility that registration would harm Ella. The circuit court issued a written decision denying Ella's motions. This appeal follows.

**DISCUSSION**

*I. Stay of Sex Offender Registration*

¶11 Ella first argues that the circuit court erroneously exercised its discretion by refusing to stay the disposition requiring her to register as a sex offender. *See State v. Cesar G.*, 2004 WI 61, ¶40, 272 Wis. 2d 22, 682 N.W.2d 1 (holding that "the sex offender registration requirement established in WIS. STAT.

§ 938.34(15m) is a disposition" and that a circuit court has the authority to stay that disposition). We review a circuit court's order denying such a stay for an erroneous exercise of discretion. *Id.*, ¶42. A discretionary decision "will stand unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995).

¶12 A reviewing court may not substitute its discretion for that of the circuit court. *State v. Rhodes*, 2011 WI 73, ¶26, 336 Wis. 2d 64, 799 N.W.2d 850. When the circuit court sets forth inadequate reasons for its decision, however, we will independently review the record to determine whether the court properly exercised its discretion and whether the facts provide support for its decision. *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶30, 326 Wis. 2d 640, 785 N.W.2d 493.

¶13 In considering whether to stay the sex offender registration requirement for a delinquent juvenile, a circuit court should consider the factors enumerated in WIS. STAT. §§ 938.34(15m)(c) and 301.45(1m)(e). *See Cesar G.*, 272 Wis. 2d 22, ¶52. Those factors include: (1) the seriousness of the offense; (2) the ages of the juvenile and the victim at the time of the violation; (3) the relationship between the juvenile and the victim; (4) whether the violation resulted in bodily harm; (5) whether the victim suffered from a mental illness or deficiency that rendered him or her incapable of understanding or evaluating the consequences of his or her actions; (6) the probability that the juvenile will commit other violations in the future; and (7) any other factors the court determines may be relevant. *Id.*, ¶50. Importantly, the court has discretion as to which factors to consider and how to weigh them. *See State v. Jeremy P.*, 2005 WI App 13, ¶10, 278 Wis. 2d 366, 692 N.W.2d 311 (2004); *see also* §§ 301.45(1m)(e), 938.34(15m)(c). The juvenile bears the burden to prove by

clear and convincing evidence that, when considering the factors, a stay should be granted in his or her case. *Cesar G.*, 272 Wis. 2d 22, ¶51.

¶14    Ella first contends the circuit court erred as a matter of law when it concluded that she had to prove that she posed "no risk," rather than a low risk, to reoffend. She argues the "no risk" standard is not the law and is impossible to prove.

¶15    Ella also contends the circuit court erred in finding that she would not face any added harm from the sex offender registration, arguing that this view constitutes a fundamental misunderstanding about the LGBTQ[4] population. She asserts that requiring her to use her male name when she identifies as female "outs her."[5]

¶16    Ella further asserts that the circuit court placed too much emphasis on the seriousness of the offense, and it failed to weigh the other *Cesar G.* factors as applied to her individually. In addition, Ella contends the court relied on incorrect facts by stating that she had been inconsistent in reporting information to her treatment providers. Specifically, Ella contends the court noted that she reported to Dr. Reich that she had never been involved in "this kind" of behavior before, but Ella failed to note that she later told an individual at Lincoln Hills that

---

[4] "LGBTQ" stands for lesbian, gay, bisexual, transgender, and queer. Gay & Lesbian Alliance Against Defamation, *GLAAD Media Reference Guide* (10th ed. Oct. 2016).

[5] Ella contends that having a legal name that does not match the gender presented indicates to the public that she is transgender rather than cisgender. She refers to this as "outing," which is the act of publicly revealing another person's sexual orientation or gender identity without that person's consent. Gay & Lesbian Alliance Against Defamation, *GLAAD Media Reference Guide* (10th ed. Oct. 2016).

8

she had been sexually active with a boyfriend. She also claims the court relied on incorrect facts by noting she had a "history of being abusive toward[] teachers, at least verbally and perhaps otherwise," and that it ignored the expert risk assessment information.

¶17    With regard to Ella's risk to reoffend, while Ella argues the circuit court imposed an erroneous and impossible "no risk" standard instead of weighing "the probability that the juvenile will reoffend, not the mere possibility of re-offense," we cannot discern that the court actually employed such a legal standard. The court found that:

> A risk remains to reoffend; reduced, but nonetheless a risk. That level of risk and the benefits to the protection of the community by complying with the [sex offender registry] need[] to be balanced against the harm felt by the individual as a consequence of registering.
>
>  ….
>
> The risk to reoffend exists in this case, albeit … low. However, if such reoffen[s]e happens, the harm felt to the victims is very high.

It is clear from the above findings that the court did not use a "no risk" standard—i.e., the court did not determine Ella must prove she poses no risk of reoffending. Instead, the court considered that her risk, albeit low, was significant enough to warrant the need for further community protection through the sex offender registry. This was a proper exercise of the court's discretion.

¶18    Ella further argues the circuit court erroneously exercised its discretion by failing to consider the following evidence regarding her low risk of reoffense: (1) Ella successfully completed Lincoln Hills' two-part juvenile cognitive intervention program; (2) she was bullied because of her sexuality and

was physically assaulted on two separate occasions; (3) Ella's case manager testified that she completed "[her] apology letter to h[er] victim and was making 'very good progress' toward[] her schooling"; (4) she successfully completed sex offender treatment at MJTC; and (5) MJTC psychologist Michael Caldwell conducted a WIS. STAT. ch. 980 evaluation and found Ella to be a low risk to reoffend.

¶19　The circuit court, however, did consider this evidence.  For example, the court considered Dr. Caldwell's findings and Ella's completion of sex offender treatment as supporting her claim that she was a low risk to reoffend.  The court nonetheless found that Ella did act inappropriately while at Lincoln Hills when she "attempted to kiss another student without that student's permission," and that this act evidenced her impulsiveness and created a concern that Ella would act out sexually in the future.  The court agreed that there was a reduced risk of reoffense, but the court observed that the harm felt by the victims is very high if reoffense happens.  The court properly noted that the "goal of juvenile rehabilitation needs to be balanced with the purposes of personal accountability and of public protection."

¶20　Ella additionally argues the circuit court erroneously "ignored" Dr. Reich's testimony and Dr. Caldwell's evaluation, both of which placed Ella in a relatively low-risk category for reoffense.  However, as indicated by the court's findings set forth above, it is evident the court did not ignore but, in fact adopted, that testimony.  In addition, to the extent it could be discerned that the court's risk conclusion was any different from that of the experts, a court acting as fact finder is not required to accept an expert's ultimate conclusion.  *See Sullivan v. Bautz*, 2006 WI App 238, ¶18, 297 Wis. 2d 430, 724 N.W.2d 908.

¶21 The circuit court properly considered the seriousness of Ella's offense and its impact upon the victim when denying the request to stay the sex offender registry requirement despite Ella's relatively low risk of reoffense. Although Alan did not suffer bodily harm, the assault was indeed very serious. The court noted that Alan was held down against his will and was prevented from yelling for help. The court further noted that Alan suffered from autism, was progressing slower than his peers in school, had emotional and learning problems in school, and was blind in one eye. Although Ella and Alan were ten months apart in age, Alan was in therapy all his life, and his situation became worse after the assault. Indeed, Alan's mother testified that the assault has affected the whole family. As to the seriousness of the offense, the court reasonably found that Ella's sexual assault of Alan was violent in nature.

¶22 Ella's sexual assault was also nonconsensual and arguably premeditated. Prior to the sexual assault occurring, Alan expressed to Ella and Mandy that he was not interested in this type of behavior. Facebook messages reveal that Ella asked Alan if he had ever received "head" before. Alan repeatedly told Ella that he did not want "head" from Ella. Additionally, Alan told Mandy that he did not want to get "head" from a "guy." Although Ella notes that she, Alan, and Mandy were friends, the messages support the circuit court's findings that "[Alan] didn't want to have this type of relationship." Alan was also a vulnerable victim. He is blind in his left eye, a high school freshman functioning at a sixth-grade level, and suffers from attention deficit disorder and autism spectrum disorder. As stated above, Alan was much smaller than Ella. All of these facts strongly support the court's finding regarding the seriousness of the offense.

¶23 In Ella's supplemental reply brief, she attempts to minimize the seriousness of her offense and the impact on Alan by asserting that: (1) the offense was a very short incident between three individuals in the same friend group; (2) there was no violence or threat of violence; (3) it was Ella who stopped the encounter; (4) Alan did not report the incident; (5) Alan's parents did not note any changes in his behavior or attitude; (6) although Alan has autism with cognitive delays, he is still in mainstream schools with the ability to make friends; (7) Ella's physical description by the DOC was outdated; and (8) blindness is not a mental deficiency that rendered Alan incapable of understanding the consequences of his actions. Ella's arguments in this regard fail because we search the record for evidence that supports findings the circuit court made, not for findings it could have made but did not. *See Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. Here, the record amply supports the court's findings concerning the seriousness of the offense and its impact on Alan.

¶24 The circuit court also properly exercised its discretion in denying the stay by balancing the public's interest in having Ella register as a sex offender against the harm to Ella posed by such registration. The court found that although Ella may be stigmatized by having to register as a sex offender, such stigma is undoubtedly experienced by anyone who has to register as a sex offender. And while Ella argues she will be harmed by remaining on the sex offender registry, she has presented no evidence of actual harm to date in support of that claim. The court considered that the purposes underlying the registration requirement are to protect the public and to assist law enforcement. The record supports the court's determination that the public's interest in law enforcement's effective use of the registry outweighs any harm to Ella caused by the registration requirement.

¶25    In all, the record contains ample evidence supporting the circuit court's discretionary decision to deny Ella's motion to stay the sex offender registration requirement.  Based on the evidence presented, the court could reasonably determine that Ella failed to show by clear and convincing evidence that a stay should be granted.  We discern no discretionary error by the court as to its consideration and weighing of the evidence presented.  *See **Jeremy P.**,* 278 Wis. 2d 366, ¶10.

## II. *First Amendment Challenge*

¶26    Ella argues that the name-change ban in WIS. STAT. § 301.47(2)(a)-(b) renders the sex offender registry statute unconstitutional, as applied to her, under the First Amendment[6] to the United States Constitution.  An as-applied constitutional challenge "is a claim that a statute is unconstitutional as it relates to the facts of a particular case or to a particular party." ***State v. Pocian***, 2012 WI App 58, ¶6, 341 Wis. 2d 380, 814 N.W.2d 894.  Whether a statute is unconstitutional as applied is a question of law that we review de novo. ***Dane Cnty. DHS v. J.R.***, 2020 WI App 5, ¶51, 390 Wis. 2d 326, 938 N.W.2d 614 (2019).

¶27    In order to determine whether the name-change ban in WIS. STAT. § 301.47 violates Ella's First Amendment rights, we must first determine whether the name-change ban regulates speech or expressive conduct. *See **State v. Baron***, 2009 WI 58, ¶14, 318 Wis. 2d 60, 769 N.W.2d 34.  If neither speech nor

---

[6] Section 1 of the Fourteenth Amendment to the United States Constitution incorporated the First Amendment, so that it applies to state government. *See **DiMa Corp. v. Town of Hallie**,* 185 F.3d 823, 826 (7th Cir. 1999).

expressive conduct is being regulated, we need not utilize a First Amendment analysis because the statute does not implicate the First Amendment. *Id.* "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies. To hold otherwise would be to create a rule that all conduct is presumptively expressive." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). If we determine that speech or expressive conduct is being regulated, then we must decide whether the statute's regulation is content based or content neutral. *See Baron*, 318 Wis. 2d 60, ¶14. As we further discuss below, a content based statute must survive strict scrutiny, whereas a content neutral statute must only survive intermediate scrutiny. *Id.*

¶28 Ella argues that the name-change ban in the sex offender registry statute regulates her right to express female identity and is therefore an unconstitutional burden on her free speech. Ella contends that having a name consistent with her gender identity gives her "dignity and autonomy that otherwise does not exist with her birth name." She further contends that her ability to informally identify with a female-sounding name—as long as she notifies the registry that she uses such a name—is insufficient to protect her right to formally identify in that manner with a name other than her current legal name. This inability, according to Ella, prohibits her from truly identifying as a woman, and it also forces her to "out herself as a male anytime she is required to present her legal name."

¶29     In response, the State argues the statutory provision does not prohibit Ella from using her preferred name to express her gender identity.[7]  The State asserts that Ella can use whatever name she chooses, as long as that name or alias is included in the sex offender registry.  The State further contends that while WIS. STAT. § 301.47 prohibits Ella from legally changing her name, it recognizes her right to identify herself by her preferred name—again, subject only to her including that name in the sex offender registry.

¶30     We agree with the State's argument.  Ella's wish to express herself with her desired name does not mean that the ban on legally changing her name implicates the First Amendment.  This court rejected a similar argument in ***Williams v. Racine County Circuit Court***, 197 Wis. 2d 841, 541 N.W.2d 514 (Ct. App. 1995).  There, the circuit court denied a prisoner's petition to change his name pursuant to WIS. STAT. § 786.36.  ***Williams***, 197 Wis. 2d at 846.  On appeal, the prisoner argued that denying his requested name change violated his protected right to religious freedom and his First Amendment rights.  ***Id.***  We rejected that argument, reasoning that the prisoner had "no positive right to a name change." ***Id.***

¶31     Additionally, a federal district court has recently held that a transgender plaintiff failed to meet her burden of showing that Wisconsin's

---

[7] The State also argues that Ella's claim that WIS. STAT. § 301.47(2) violates her First Amendment right to free speech is not yet ripe because the "claim is based on the possibility that she might someday unsuccessfully try to change her name."  A claim is not ripe if it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." ***Thomas v. Union Carbide Agric. Prods. Co.***, 473 U.S. 568, 580-81 (1985).  However, Ella is currently required to register as a sex offender under WIS. STAT. § 301.45.  Because she is required to register as a sex offender, she may not legally change her name at this time without punishment and we therefore reject the State's ripeness argument.

name-change ban for registered sex offenders implicated her right to free speech. *See **Krebs v. Graveley***, No. 19-cv-634-jps, 2020 WL 1479189, at \*2 (E.D. Wis. Mar. 26, 2020), *appeal filed.* "Without this foundation," the court noted, the plaintiff could not "present a viable First Amendment claim at all, irrespective of the level of scrutiny to be applied." ***Id.*** The court declined to apply even "rational basis review" because "[w]ithout her freedom of speech being implicated in the matter," the plaintiff "present[ed] no claim at all." ***Id.*** We agree with, and adopt, the foregoing analysis.

¶32    Ella has therefore failed to meet her burden to prove that her First Amendment rights are implicated by the sex offender registry statute, and she has failed to rebut the presumption of constitutionality. Ella has the right to use whatever name she chooses, provided she includes it in the sex offender registry. *See* WIS. STAT. § 301.47(2)(b). Her freedom of expression is therefore not implicated. Neither the fact that she may feel uncomfortable when having to use her legal name, nor that she feels "outed" when she does use her legal name, renders the statute unconstitutional as applied to her. Ella is capable of expressing herself and identifying herself consistent with her gender identity. Because the name-change ban in WIS. STAT. § 301.47 does not restrict Ella's ability to express herself, we need not utilize a First Amendment analysis because the statute does not implicate the First Amendment. *See **Baron***, 318 Wis. 2d 60, ¶14.

¶33    Nonetheless, if we engage in a First Amendment analysis, we conclude that the name-change ban in WIS. STAT. § 301.47(2) is content neutral, and, thus, it does not trigger a strict-scrutiny analysis. Ella contends strict scrutiny applies because the registry imposes a content based restriction on her, such that the State must show, beyond a reasonable doubt, that the statute is narrowly tailored to serve a compelling state interest. *See **R.A.V. v. St. Paul***, 505 U.S. 377,

395 (1992). Ella asserts that the "violation of her right to express her true identity is content based because it restricts her ability to express her transgender identity while not doing the same for registrants who are cisgender." She claims the "communication at issue is content based because it conveys gender identity, and the registry prevents transgender individuals from communicating" their preferred gender identity "while not prohibiting cisgender people from doing so."

¶34 Content based laws—i.e., those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citations omitted). Government regulation of speech is content based if a law applies to particular speech because of the topic discussed, or the idea or message expressed. *Id.*

¶35 Ella's argument that the name-change ban is content based misses the mark. The name-change ban does not target speech based on its communicative content. Specifically, it does not apply to particular speech because of the topic discussed, or the idea or message being conveyed. *See id.* On its face, the name-change ban only requires an individual to register using his or her existing legal name and any other name the individual wishes to use, and it prohibits an individual from changing his or her legal name. *See* WIS. STAT. § 301.47(2)(a)-(b). The statute is content neutral because it does not determine such matters as what name a person must use—or what must be contained in a name—and does not treat anyone differently based on their name. The statute might be content based if, for example, it required a male to have a traditionally male-sounding name (e.g., William, John) and prohibited males from legally using "mixed-gender" names (e.g., Payton, Connie) or traditionally female-sounding

17

names (e.g., Suzy, Mary). But, of course, the statute does not do so. The statute merely prohibits an individual from changing his or her current legal name, regardless of the message it conveys. Even if the name-change ban might disproportionately affect transgender persons, the statute is still content neutral. "[A] facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics." *McCullen v. Coakley*, 573 U.S. 464, 480 (2014).

¶36 As a content neutral statute, the name-change ban would at most be subject to intermediate scrutiny. *See Baron*, 318 Wis. 2d 60, ¶14. A content neutral restriction on speech is lawful under intermediate scrutiny if: (1) it furthers an important or substantial government interest; (2) the governmental interest is unrelated to the suppression of free expression; and (3) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994). The regulation does not need to be the least speech-restrictive means of advancing the government's interest in order to satisfy this standard. *Id.* A regulation is sufficiently narrow if the governmental interest "would be achieved less effectively absent the regulation." *Id.* (citation omitted).

¶37 Wisconsin's statutory name-change ban for sex offender registrants easily passes intermediate scrutiny. Under the first prong of the *Turner* test, the name-change ban furthers an important or substantial government interest—specifically, to "protect the public and assist law enforcement." *Bollig*, 232 Wis. 2d 561, ¶21. Allowing changes to a registrant's legal name would frustrate the ability of the public and law enforcement to quickly identify sex offenders and their locations.

¶38    Under the second prong of the *Turner* test, the governmental interest is unrelated to the suppression of free expression. As explained above, the name-change ban is content neutral and is justified without reference to the allegedly regulated "speech."

¶39    As to the third prong of the *Turner* test, the name-change ban is sufficiently tailored to achieve the State's important interest in efficiently tracking registered sex offenders. As noted above, the statute specifically enables Ella to express herself by using her desired name; she simply may not change her legal name. The name-change ban is sufficiently narrow in scope because it does "not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Turner*, 512 U.S. at 662 (citation omitted).

¶40    In summary, the name-change ban in WIS. STAT. § 301.47 does not implicate the First Amendment because the statute does not prohibit Ella from using whatever name she chooses. And, even if we were to conclude the ban implicated the First Amendment, strict scrutiny does not apply because the ban is content neutral. The ban satisfies intermediate scrutiny because it is sufficiently tailored to the State's important interest in protecting the public and aiding law enforcement.

*III. Eighth Amendment Challenge*

¶41    Ella also raises an as-applied challenge to the sex offender registry under the Eighth Amendment[8] to the United States Constitution, which prohibits

---

[8] The Eighth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment. *See* **Robinson v. California**, 370 U.S. 660, 666-67 (1962).

states from imposing "cruel and unusual punishments." *See* U.S. CONST. amend. VIII. The Wisconsin Constitution contains a similar provision, which is interpreted identically to the federal provision. *State v. Ninham*, 2011 WI 33, ¶45, 333 Wis. 2d 335, 797 N.W.2d 451.

¶42 Ella's argument regarding the Eighth Amendment fails because our supreme court has held that Wisconsin's sex offender registration requirement does not constitute punishment at all. *See Bollig*, 232 Wis. 2d 561, ¶27. In *Bollig*, the court held that "Wisconsin's registration statute does not evince the intent to punish sex offenders, but rather it reflects the intent to protect the public and assist law enforcement." *Id.*, ¶21. *Bollig* is binding and requires that we conclude the sex offender registry is not cruel or unusual punishment. We therefore reject Ella's claim in that regard.

¶43 While Ella concedes that, under *Bollig*, the purpose of the sex offender registry is civil and nonpunitive, she nevertheless argues that its effect is punitive as applied to her, given her transgender identity. To determine if a statute is punitive, we apply the "'intent-effects' test." *State v. Williams*, 2018 WI 59, ¶21, 381 Wis. 2d 661, 912 N.W.2d 373. If there is a finding that the intent was to impose punishment, the law is considered punitive and the inquiry stops there. *City of S. Milwaukee v. Kester*, 2013 WI App 50, ¶22, 347 Wis. 2d 334, 830 N.W.2d 710. If the intent was to impose a civil and nonpunitive regulatory scheme, the court must next determine whether the effects of the sanctions imposed by the law are so punitive as to render them criminal. *Id.*

¶44 Our supreme court found in *Bollig* that the intent of the sex offender registry statute is not to impose punishment but, rather, to create a civil regulatory scheme to protect the public and assist law enforcement. Moreover, the effects of

the statute, as a whole, are not so punitive as to render it criminal in nature.  In asserting an as-applied challenge, Ella is attempting to relitigate the issue of whether mandatory sex offender registration is punitive due to its effects as applied to her.  Ella cannot circumvent *Bollig*'s holding simply by bringing an as-applied challenge.  *See Seling v. Young*, 531 U.S. 250, 263-65 (2001).

¶45    In *Young*, an inmate brought an as-applied challenge to Washington State's Community Protection Act of 1990, asserting the Act was punitive as applied to him in violation of the Double Jeopardy and Ex Post Facto Clauses of the United States Constitution.  *Id.* at 253-54.  The Washington Supreme Court, however, had already concluded that the Act was civil in nature, rather than punitive.  *Id.* at 253.  The United States Supreme Court held that Young could not "obtain release through an 'as-applied' challenge to the Washington Act on double jeopardy and *ex post facto* grounds."  *Id.* at 263.  The Court reasoned "that [allowing] an 'as-applied' analysis would prove unworkable.  Such an analysis would never conclusively resolve whether a particular scheme is punitive and would thereby prevent a final determination of the scheme's validity under the Double Jeopardy and *Ex Post Facto* Clauses."  *Id.*  The Court further reasoned that "[p]ermitting [Young's] as-applied challenge would invite an end run around the Washington Supreme Court's decision that the Act is civil in circumstances where a direct attack on that decision is not before this Court."  *Id.* at 263-64.

¶46    Similarly, in the present case, we cannot now allow Ella to relitigate the issue as to whether the effects of the sex offender registry statute are so punitive as to be a criminal penalty in her case.  To do so would contravene *Bollig*, as we would have to reconsider the same factors our supreme court did in that case and arrive at a different conclusion.  We would be reweighing whether the protection of the public and assistance to law enforcement are not as important as

21

a transgender individual's right to expression. We further note that the impact of the latter consideration does not rise to the level a criminal sanction, particularly where, under the statute, Ella can still express her identity without legally changing her name.

¶47 In summary, **Bollig** prevents Ella's as-applied challenge. The Wisconsin sex offender registration requirement is not punitive. Ella may not circumvent **Bollig** by bringing an as-applied challenge. *See* **Young**, 531 U.S. at 263-65.

## CONCLUSION

¶48 We reject Ella's argument that the circuit court erroneously exercised its discretion when it denied Ella's postdispositional motion to stay the requirement that she register as a sex offender. We further conclude that the statutory name-change ban does not implicate the First Amendment right to free speech, and even if it does, it is content neutral and does not trigger strict scrutiny. The ban survives intermediate scrutiny. Finally, precedent from our supreme court prevents Ella's Eighth Amendment as-applied challenge. Accordingly, we affirm.

*By the Court.*—Orders affirmed.